## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.:   15-cv-2800

**ERIC NEWTON**

       **Plaintiff,**

**v.**

**COMDATA, INC.**

       **Defendant.**

---

### COMPLAINT AND JURY DEMAND

---

### JURISDICTION

1.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 47 U.S.C. § 227 *et seq.*

2.    This action arises out of Defendant's repeated and intentional violations of the Telephone Consumer Protection Act (TCPA) of 1991, 47 U.S.C.§227 *et seq.*

3.    This Court has original jurisdiction over the subject matter of this case, *Mims v. Arrow Fin. Serv.*, LLC, 132 S.Ct. 740 (2012).

4.    The Court has supplemental jurisdiction to hear the Plaintiff's state law claims pursuant to 28 U.S.C. §1367 as said claims arise from the same transactions and occurrences.

### VENUE

5.    Venue is proper in this District.

6.    The acts and transactions occurred in this District.

7.    The Plaintiff resides in this District.

8.    The Defendant transacts business in this Judicial District.

9.     The Defendant has a registered agent in Colorado located at 1560 Broadway, Denver, Colorado 80202.

## PARTIES

10.    Plaintiff Eric Newton (hereinafter "Plaintiff") is a natural person who resides in Loveland, Colorado.

11.    The Plaintiff is a disabled American veteran and retired Marine Corps soldier.

12.    Defendant Comdata, Inc. (hereinafter "Defendant") is a Delaware Corporation operating from an address of 5301 Maryland Way, Brentwood, Tennessee 37027.

## TELEPHONE CONSUMER PROTECTION ACT OF 1991

## (TCPA) 47 U.S.C. §227

13.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

14.    In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices.  The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."  Specifically, the plain language of Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

15.    The Defendant, using an autodialer, has contacted the Plaintiff on his cellular telephone daily, often numerous times, for seven months concerning the account of another individual that is unknown to the Plaintiff.

16.    At no time has the Plaintiff given express consent to the Defendant to contact him via his cellular telephone.

## FACTUAL ALLEGATIONS

17.     The Plaintiff has a cellular telephone that he uses exclusively for private purposes.

18.     The Plaintiff has no business relationship with the Defendant.

19.     The Plaintiff has never given consent to the Defendant to contact him and in fact has made numerous efforts to have the Defendant stop their intrusive, annoying and illegal conduct.

20.     The Plaintiff has had the same cellular telephone number for approximately eight months.

21.     Beginning on or around May 14, 2015, the Defendant, using automated dialing equipment, started sending unsolicited text messages to the Plaintiff on his cellular telephone on a daily basis, often numerous times per day.

22.     The unsolicited and annoying text messages would be sent by the Defendant to the Plaintiff at all hours of the day and night, including several that were sent between the hours of 11:00 p.m. and 6:00 a.m.

23.     The Defendant originates each and every one of these unsolicited text messages.

24.     The Plaintiff has contacted the Defendant numerous times to demand that the Defendant stop sending the unsolicited text messages.

25.     The Plaintiff has spoken to employee/representatives of the Defendant who have acknowledged that there is a mistake with the automated dialing equipment used by the Defendant, but apparently no one employed by the Defendant knows how to take the Plaintiff's cellular telephone number out of the Defendant's automated dialing equipment to get the annoying, harassing and unsolicited messaging to stop.

26.     At one point, beginning in June, 2015 the Plaintiff was actually able to get an employee/agent/representative of the Defendant to try and help resolve the issue.  This employee was named Scott (Last Name Unknown).

3

27.     Scott and the Plaintiff exchanged several telephone calls and the Plaintiff felt confident that Scott would be able to help.

28.     However, Scott apparently no longer works for the Plaintiff and Scott was not able to resolve the issue.

29.     In addition to personal calls placed by the Plaintiff to the Defendant, the Plaintiff has sent emails, has replied "Stop" in texts back to the Defendant and has tried everything that the Defendant has suggested to fix the problem created and ongoing by the Defendant.

30.     Recently, when the Plaintiff has contacted the Defendant in his ongoing effort to resolve this harassment by the Defendant, the employees/agent/representatives of the Defendant have treated him rudely and simply hang up on him.

31.     The Defendant once suggested that this was a problem that could not be fixed by the Defendant and that the Plaintiff should consider getting a new cellular telephone number.

32.     The Plaintiff, who suffers from a number of medical conditions relies on his cellular telephone as his primary source of communication with his family, friends and medical providers.

33.     The Plaintiff should not be expected to have to change his telephone number as a solution to fixing a problem created entirely by the Defendant.

34.     Despite the Plaintiff's efforts, the Defendant continues its nearly daily harassment of the Plaintiff and his family.

35.     The actions of the Defendant are willful and intentional.

36.     The Plaintiff has a cellular telephone service where charges are incurred for the use of texting, placing and receiving telephone calls, even if the texts and telephone calls are unwanted.

37.     At the time of this Complaint, the Plaintiff has logged over 581 unsolicited, unwanted and harassing text messages sent to him by the Defendant.

38.     Upon information and belief the Defendant has a log of each and every text message sent to the Plaintiff as well as telephone recordings between the Plaintiff and the Defendant's employee/agents/representatives.

39.     This issue has caused the Plaintiff anxiety, grief, anger, loss of sleep and emotional distress.

40.     The conduct of the Defendant and unwillingness of the Defendant to cease its illegal conduct has acerbated the medical and emotional issues that the Plaintiff suffers from.

## CAUSES OF ACTION

## COUNT I.

VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

47 U.S.C.§227 et seq.

41.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

42.     The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the TCPA.

43.     The Plaintiff is entitled to statutory damages of $500.00 per violation of the TCPA.

44.     If the Plaintiff, in the course of discovery or at trial, can establish that the Defendant knowingly and/or willfully violated the TCPA, the Plaintiff is entitled to $1,500.00 per violation of the TCPA.

## COUNT II.

INVASION OF PRIVACY

(Unreasonable Intrusion upon the Seclusion of Another)

45.　Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46.　The Defendant has intentionally intruded, physically or otherwise upon the seclusion and solitude of the plaintiff.

47.　Such intrusion would be offensive or objectionable to a reasonable person.

48.　The invasion has caused the Plaintiff to lose sleep, lose the use of his cellular telephone, has disrupted the Plaintiff's private family time and often causes his infant child distress.

## COUNT III.

INFLICTION OF EMOTIONAL DISTRESS

49.　Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50.　Defendant intended to cause plaintiff to suffer emotional distress, and/or was engaged in outrageous conduct with reckless disregard of the probability of causing plaintiff to suffer emotional distress and intimidation.

51.　As a direct and proximate result of defendant's outrageous conduct, plaintiff suffered mental distress, mental suffering, and/or mental anguish, including sleeplessness, nervousness, grief, anger and anxiety.

52.　As a proximate result of defendants' conduct, plaintiff has suffered damages in an amount to be determined according to proof.

## TRIAL BY JURY

53.　Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

1.      For compensatory damages;

2.      For statutory damages;

3.      For punitive damages;

4.      For injunctive relief, restitution, and disgorgement of ill-gotten gains;

5.      For pre-judgment interest to the extent permitted by law;

6.      For an award of attorneys' fees, costs and expenses incurred in the investigation, filing and

prosecution of this action; and

7.      For such other and further relief as the Court may deem just.


Respectfully submitted,

 s/Troy D. Krenning
Troy D. Krenning, Esq.
Law Office of Troy D. Krenning, LLC
640 E. Eisenhower Blvd., Suite 150
Loveland, Colorado 80537
(970) 292-8290
Email: troydklaw@msn.com